# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **LORENZA GERALD FEREBEE, JR.,** )<br>    Plaintiff,  )<br>  )<br>**v.**  )<br>  )<br>  )<br>**WARDEN C. MANIS and**  )<br>**UNIT MANAGER Q. REYNOLDS**  )<br>    Defendants.  )<br>  ) | Civil Action No. 7:19cv00628<br><br>**MEMORANDUM OPINION**<br>By: Hon. Pamela Meade Sargent<br>United States Magistrate Judge |

Plaintiff, Lorenza Gerald Ferebee, Jr., ("Ferebee"), is a Virginia Department of Corrections, ("VDOC"), inmate currently housed at Wallens Ridge State Prison, ("Wallens Ridge"). Ferebee has filed this civil rights action pursuant to 42 U.S.C. § 1983, against VDOC employees Wallens Ridge Warden C. Manis, ("Manis"), and Unit Manager Q. Reynolds, ("Reynolds"), alleging that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment due to exposure to mold. This case is before the court on a motion for preliminary injunctive relief, (Docket Item No. 24) ("Motion"). For the reasons stated below, the Motion will be denied.

*I. Facts*

In his Amended Complaint, (Docket Item No. 32), Ferebee seeks a declaratory judgment, injunctive relief and damages, alleging that the defendants were deliberately indifferent to the danger posed to him by exposure to the environmental

-1-

hazard of mold or black mold at Wallens Ridge. In his Amended Complaint, which is sworn to under penalty of perjury, Ferebee alleged that he was transferred to Wallens Ridge on February 26, 2019. Ferebee alleged that he spoke to both Manis and Reynolds "about the Prison Conditions" of "Mold" in his cell, B-104, on March 28, 2019. Ferebee alleged that mold was all over his cell walls, window and bunk.

In response to an Informal Complaint complaining of mold, filed on April 25, 2019, Reynolds responded on April 29, 2019, that he had just cleaned the cell, and Ferebee should let him know if he needed additional cleaning supplies. Ferebee said that he then filed a Regular Grievance concerning the mold in his cell. Warden Manis responded that Ferebee's Grievance was unfounded because the Maintenance Department had inspected Ferebee's cell and found no evidence of mold. This decision was upheld on appeal to the Regional Administrator. Ferebee attached his requests for administrative remedies and the VDOC's responses to his original Complaint. (Docket Item No. 1-1.)

Ferebee said that he spoke to Manis again on June 3, 2019, about "overall" prison conditions. After that, Ferebee alleged he was moved to cell B-101 and, then, to cell B-102, where mold also existed. Ferebee alleged that he spoke to Manis again on July 11, 2019, about the black mold in cell B-101.

Ferebee alleged that the mold destroyed his photos and photo album, letters, cards, books, clothes and blanket. Ferebee seeks compensatory damages of $1 million, punitive damages of $500,000.00, and nominal, special and treble damages and injunctive relief ordering that he and all prisoners be removed from Wallens Ridge.

In his Motion, which also was sworn, Ferebee alleged that he has been exposed to mold and/or black mold in Wallens Ridge cells B-104, B-101 and B-102 since February 26, 2019. Ferebee, again, alleged that he spoke to Manis regarding prison conditions on March 28 and June 3, 2019. Ferebee also alleged that he spoke to Reynold on July 11, 2019, and to VDOC Health Services Director McMillian on July 20, 2019, about the "mold and/or black mold" in Wallens Ridge. On July 11, 2019, Ferebee alleged that he showed Reynolds the "prison condition(s) all over the cell." (Motion at 4.)

Ferebee alleged in the Motion that he could "barely breath[e] most of the time in my cell and while in the pod for pod recreation because I feel a shortness of breath and my lung(s) be hurting, and some time(s) I be coughing up blood." (Motion at 4.) Ferebee alleged that there was a crack in the prison's B Building foundation, which ran from cell B-101 to B-108, and through which rain water would travel into cells B-104, B-101 and B-102. Ferebee stated that he "believed" this crack was the source of the mold in the B Building.

In an Affidavit attached to the Motion, (Docket Item No. 24-2) ("Affidavit"), Ferebee again stated that he "can barely breath[e] and have a shortness of air and my lung(s) be hurting, some time(s) I cough up blood." (Affidavit at 2.) Ferebee also stated that he spoke with Warden Manis about "Prison Condition(s) of Mold and/or Blackmold" on March 28 and June 3, 2019, and spoke with McMillian on July 10, 2019, and "notified" him of the "pre-existing" mold and/or black mold conditions at Wallens Ridge. Ferebee also stated that he spoke with Unit Manager Reynolds on July 11, 2019, about the mold and/or black mold.

Ferebee further stated that on December 13, 2019, Reynolds came into the B-1 Pod with Correctional Sergeant Roberts and Correctional Officer Polly pushing a cart with buckets of white and blue paint, a pole and paint rollers. Ferebee further stated that a Wallens Ridge maintenance worker came into the B-1 Pod on January 30, 2020, on a "Big Moving Machine" and painted over the mold and/or black mold on the ceiling close to cells 1-8, by the sally port door and the mail and commissary box, beside #6 and 7 pod phones and above the pod television. Days before, he stated, a maintenance worker and supervisor came into the B-1 Pod and sprayed bleach on the mold and/or black mold all over the ceiling and took a towel and wiped it off.

Ferebee stated that Wallens Ridge prisoner Kevon Williams, No. 1778880, on March 19, 2019, swore under oath that he had been housed at Wallens Ridge in cell B-103 since May 12, 2017, and his cell walls, windows and metal bunk were infested with mold and there was no air conditioning. Williams claimed that staff and the correctional officers would paint over the mold. He said that the mold affected his laundry, clothes and bed linens.

Ferebee stated that Wallens Ridge prisoner Thomas Wade, No. 1055103, on March 19, 2019, swore under oath that he had been housed at Wallens Ridge in cell B-103 since February 12, 2017.  Wade said that black mold infected his cell walls, windows and metal bunk because there was no ventilation in the building.  Wade said breathing the mold was affecting his lungs. Wade said that the mold problem grew worse once the ventilation system in the building shut down.

Ferebee stated that Wallens Ridge prisoner Lawrence Nolerven arrived at Wallens Ridge on January 25, 2019, and had been exposed to black mold since then,

causing him shortness of breath as well as chest tightening with daily headache and eye irritation. Nolerven said he was exposed to black mold as well as fecal matter in D Building cell 220 and in B Building cell 112. He said that black mold was "highly visible in numerous place(s) on the pod."

Ferebee references the statements for Williams, Wade and Nolerven by exhibit number, but none of these original sworn statements have been filed in this matter by Ferebee.

Ferebee also provided the court with a copy of his Institutional Classification Authority Hearing Report for a hearing held on January 7, 2020. (Docket Item No. 24-3.) This Report recommended that Ferebee be transferred to Keen Mountain Correctional Center, River North Correctional Center or Sussex II State Prison. This transfer was disapproved by the Central Classification Services.

Ferebee filed a motion to amend his request for preliminary injunctive relief, (Docket Item No. 56), which has been denied by the court. This motion to amend references another "Affidavit;" however, no affidavit from Ferebee was attached to that motion. That motion was not sworn under oath and, therefore, may not be considered as evidence on the Motion. Nonetheless, in that motion, Ferebee alleged that he was diagnosed with asthma by Wallens Ridge Dr. B. Mullens and prescribed an inhaler. Ferebee alleged that he experienced shortness of breath, hurting lungs, dizziness, lightheadedness, wheezing and coughing up blood on occasion due to being exposed to mold or black mold. Ferebee asserted that neither he, nor any of the defendants, was qualified to determine the difference between mold, black mold or mildew, but he said that he knew that the "pre-existing known fungi" is an environmental health hazardous prison condition at Wallens Ridge.

In a sworn reply on the Motion, Ferebee claimed that the nurses and physicians at Wallens Ridge were "acting to cover up" his complaints about the effect breathing mold had on his body by not documenting these complaints in his health records. Ferebee attached several receipts for the purchase of items of personal property and Personal Property Request Forms to his reply. (Docket Item No. 40-1 at 1-6.) Ferebee also attached a Level II Response to Regular Grievance No. WRSP-20-REG-00067, on which the Director of Offender Management Services noted that Ferebee had been approved for transfer to a Security Level 4 facility when bed space became available. (Docket Item No. 40-1 at 7.)

Ferebee has filed a second Affidavit with the court, (Docket Item No. 54) ("Second Affidavit"), in which he stated that the "fungi" in Building B at Wallens Ridge had to be mold and not mildew because it returned every time it was painted over. He stated that Defendant Quinn had told him that the fungi was mildew and not mold. Ferebee stated that Quinn said that, if he reported that there was mold in the building, "B1 Pod will not be suitable for offender(s) to live…." (Second Affidavit at 3.) Ferebee stated that he and several other inmates had complained about the mold, but it had never been properly investigated.

Ferebee stated that he had been diagnosed with asthma after he had filed an Informal Complaint alleging that the Medical Department was trying to "cover up" his medical concerns over mold exposure. Ferebee stated that Wallens Ridge physician Dr. B. Mullins diagnosed him with asthma due to mold exposure and prescribed an inhaler. Ferebee, again, stated that he suffered from shortness of breath, hurting lungs, dizziness, lightheadedness, wheezing and coughing up blood, and his personal property had been damaged.

Ferebee has provided a written statement from Wallens Ridge inmate Kevon Williams, signed under penalty of perjury. (Docket Item No. 54 at 11-12.) In this statement, Williams said he had been housed in the B-1 Building at Wallens Ridge since May 12, 2017. Williams said his cell was "infested with mold." (Docket Item No. 54 at 12.) Williams said the mold was affecting his laundry. He said the mold had been a problem since he had been housing in the B-1 Building. He said that the staff "try to paint over it so it would look[] like nothing…. (Docket Item No. 54 at 12.)

Ferebee has provided a written statement from Wallens Ridge inmate Thomas Wade, signed under penalty of perjury. (Docket Item No. 54 at 13-14.) In this statement, Wade said he had been housing in cell 103 in the B Building at Wallens Ridge since February 2017. Wade said that there was black mold on his cell walls, windows and metal bunk due to having no ventilation in the building. He said breathing the mold was affecting his lungs. Wade said the problem had grown worse since the building's ventilation system continues to shut down.

Ferebee has provided a written statement from Wallens Ridge inmate Brian Butts, signed under penalty of perjury. (Docket Item No. 54 at 15.)  Butts said that he was housed in cell 102 in the B Building at Wallens Ridges, and he previously had been housed in cell 101.  He said that there was so much mold in cell 101 that it spread throughout his personal clothing, letters and legal mail.  He said the mold is the reason he was moved from cell 101 to cell 102, but he said there was black mold in cell 102. Butts stated, "The facility tried to cover it up with white paint. But the black mold is showing itself to be stronger than anything they can attempt to cover it up with." (Docket Item No. 54 at 15.)  Butts said the mold was plain to see

underneath the beds and on the cell walls. He said that his cell was "uncomfortable, unpleasant and unlivable." (Docket Item No. 54 at 15.)

Ferebee has provided a written statement from Wallens Ridge inmate Lawrence Roberson, signed under penalty of perjury. (Docket Item No. 54 at 16.) Roberson said that he arrived at Wallens Ridge in January 2020 and, since then, had been exposed to black mold. He said this exposure caused him shortness of breath, chest tightening and headaches. Roberson said he had been housed in cells B-112 and D-220. He said that black mold was "highly visible" in numerous places in the pod. (Docket Item No. 54 at 16.)

In response to the Motion, the defendants have filed an Affidavit from Reynolds, (Docket Item No. 35-1) ("Reynolds Affidavit"). In this Affidavit, Reynolds stated that VDOC records showed that Ferebee had been incarcerated at Wallens Ridge since February 27, 2019. He said that Ferebee was housed in cell B-104 until July 3, 2019, when he was moved to cell B-101. Ferebee was moved from cell B-101 to cell B-102 on August 16, 2019, where he remained.

Reynolds Affidavit states:

During the summer of 2019, a project to replace the roofing at Wallens Ridge was underway. During the process of roof removal and replacement, increased moisture was introduced into B-1 housing unit which resulted in mildew in multiple cells, including Ferebee's cell, and in the pod office. The cells on the outside wall of the housing unit were primarily affected. The wall and the foundation are not cracked and water was not entering the building through the wall or floor as Ferebee claims. I notified the Institutional Safety Officer and the issue was addressed in August 2019. The mildew was cleaned with mildew resistant cleaners and every cell in B-1 was painted, including Ferebee's

>cell. The products were ordered by the Safety Officer, and I supervised the cleaning and painting of the cells. The mildew was resolved after the cells were cleaned and painted. To my knowledge, there has been no black mold in the cells or in any area at Wallens Ridge.

(Reynolds Affidavit at 2.)

Reynolds also stated that Ferebee had been approved for transfer to a Security Level 4 facility on March 17, 2020. A copy of the ICA Hearing Report recommending this transfer is attached to Reynolds's Affidavit.

The defendants also have provided an Affidavit from C. Collins, a registered nurse at Wallens Ridge. (Docket Item No. 35-2) ("Collins Affidavit"). Collins stated that a review of Ferebee's VDOC medical records indicated that his primary medical concerns since arriving at Wallens Ridge had been facial acne and hypertension. Collins stated that he had not been seen by medical staff for "any complaints regarding breathing problems, shortness of breath, hurting lungs, coughing up blood or mold/mildew in his housing unit." (Collins Affidavit at 1.) Collins attached copies of the relevant portion of Ferebee's medical records to her Affidavit. A review of these medicals shows no complaints of exposure to mold or mildew or any breathing problems. (Collins Affidavit at 3-10.)

The defendants also have provided an Affidavit from T. Townsend, a registered nurse and the Director of Nursing at Wallens Ridge. (Docket Item No. 59-2) ("Townsend Affidavit"). Townsend stated that she had reviewed Ferebee's VDOC medical progress notes from April 2020 to the date of her Affidavit, August 6, 2020. Townsend said that these notes showed that Ferebee was seen during sick call for a complaint of shortness of breath on May 8, 2020. The nurse noted that,

when she arrived at Ferebee's cell door, Ferebee was working out and showed no difficulty breathing.  The nurse noted that Ferebee had a steady gait, and he was alert and oriented with no signs of distress. His capillary refill time was less than two seconds.  The nurse referred Ferebee to the physician for further assessment.

According to Townsend, Ferebee was seen by a physician on May 18, 2020, for complaints of shortness of breath for one year with cough and blood. The physician noted that Ferebee had no fever and a negative history for lung disease. The physician noted that Ferebee's lungs were clear, and he ordered a chest x-ray. He also prescribed an inhaler.  A chest x-ray was conducted on Ferebee on June 4, 2020. On June 8, 2020, Dr. Mullins found that Ferebee's chest x-ray showed that his lungs were clear and within normal limits. Ferebee saw Dr. Mullins for blood work on June 18, 2020, with follow up in one month.

Ferebee saw Dr. Mullins for follow up and hypertension chronic care on July 16, 2020. Ferebee had no complaints. Townsend said that, according to the record, Ferebee continued to use his inhaler as needed due to his complaints of shortness of breath.  She said that the medical records showed that Ferebee had voiced no complaints since May 18, 2020.

The relevant medical records were attached to Townsend's Affidavit. (Townsend Affidavit at 4-8.)

The defendants also have filed a Supplemental Affidavit from Reynolds. (Docket Item No. 59-3) ("Reynolds Supplemental Affidavit"). In this Affidavit, Reynolds stated that since signing his earlier Affidavit on April 3, 2020, he had not received any new offender complaints regarding mold or mildew in the Wallens

-10-

Ridge B-1 Housing Unit or in individual cells. He also stated that he was not aware of any continuing issues concerning mildew, mold or black mold. He stated that Ferebee was no longer housed in the B-1 Housing Unit and was moved to the C Building on May 20, 2020, to the C-6 Housing Unit.

## *II. Analysis*

"The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Furthermore, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989)). The party seeking entry bears the burden to establish that these factors support granting a preliminary injunction: (1) the movant's likelihood of succeeding on the merits of the action; (2) the likelihood of irreparable harm to the movant if preliminary injunctive relief is denied; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

As stated above, the Motion before the court seeks the entry of preliminary injunctive relief ordering that Ferebee and all prisoner be transferred out of Wallens Ridge. Based on the evidence currently before the court, I find that Ferebee has failed to establish that the entry of any preliminary injunctive relief is appropriate. The evidence before the court has not shown that Ferebee is likely to suffer irreparable

harm if the requested injunctive relief is denied. Ferebee also has failed to show that he is likely to succeed on the merits of his claim.

Ferebee claims that the defendants were deliberately indifferent to the dangers posed by his conditions of confinement. In particular, Ferebee claims that the defendants were deliberately indifferent to the danger posed to him by exposure to mold or mildew in the B-1 Housing Unit at Wallens Ridge. The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To amount to deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[D]eliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Turning to the facts of Ferebee's claims, the defendants, through Reynolds's Affidavits, have admitted that there was a period of time in 2019 when there was a mildew problem in the B-1 Housing Unit at Wallens Ridge. Reynolds also has provided evidence that this mildew problem has been remedied. While Ferebee disputes this, the evidence before the court shows that Ferebee no longer is housed in the B-1 Housing Unit. Ferebee now is housed in the C-6 Housing Unit. While Ferebee claims that he suffered injury to his health from exposure to mold while housed in the B-1 Housing Unit, Ferebee has produced no medical evidence of any physical injury caused by exposure to mold or mildew. In fact, the only medical evidence before the court shows that Ferebee complained on breathing problems on

only one occasion -- May 18, 2020. The physician noted that Ferebee's lungs were clear, and he ordered a chest x-ray, which subsequently showed that Ferebee's lungs were clear and within normal limits. While the physician prescribed an inhaler for Ferebee, he did not diagnose any particular medical condition, and he did not provide any expert opinion that Ferebee's condition was caused by exposure to mold or mildew.

Based on the above, the court also cannot find that the balance of equities tips in Ferebee's favor or that the entry of preliminary injunctive relief is in the public interest.

Based on the above-stated reasons, I will deny the Motion.

**ENTERED**: September 18, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE