# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **LORENZA GERALD FEREBEE, JR.,** ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **WARDEN C. MANIS, et al.,** ) <br> Defendants. ) <br> ) <br> ) | Civil Action No. 7:19cv00628 <br><br> **MEMORANDUM OPINION** <br><br> By: Pamela Meade Sargent <br> United States Magistrate Judge |

Plaintiff, Lorenza Gerald Ferebee, Jr., ("Ferebee"), is a Virginia Department of Corrections, ("VDOC"), inmate currently housed at Wallens Ridge State Prison, ("Wallens Ridge"). Ferebee has filed this civil rights action pursuant to 42 U.S.C. § 1983, against VDOC employees Wallens Ridge Warden C. Manis, ("Manis"), and Unit Manager Q. Reynolds, ("Reynolds"), alleging that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment due to exposure to mold. This case is before the court on defendants' Motion For Summary Judgment, (Docket Item No. 42) ("Motion"), and plaintiff's Motion For Declaratory Judgment, (Docket Item No. 64), ("Cross-Motion").[1] For the reasons stated below, the Motion will be granted, and the Cross-Motion will be denied.

---

[1] Ferebee's Cross-Motion seeks to have the court "make a 'SPECIFIC DECLARATION' for: (1) WHETHER – Mold, Blackmold, or Mildew possess(s) the 'Same Element(s)' of Fungi?; and if so or not so, then (2) WHETHER – Multiple 'FALSE DISCIPLINARY INFRACTION, because of this ongoing litigation shall constitute 'RETALIATION(S)?" (Docket Item No. 64.) Ferebee's Cross-Motion is based on him asking the court to rule on whether infractions he has allegedly received constitute retaliation as a result of his currently pending lawsuits. (Docket Item No. 64.)

*I. Facts*

In his Amended Complaint, (Docket Item No. 32), Ferebee seeks a declaratory judgment, injunctive relief and damages, alleging that the defendants were deliberately indifferent to the danger posed to him by exposure to the environmental hazard of mold or black mold at Wallens Ridge. In his Amended Complaint, which is sworn to under penalty of perjury, Ferebee alleged that he was transferred to Wallens Ridge on February 26, 2019. Ferebee alleged that he spoke to both Manis and Reynolds "about the Prison Conditions" of "Mold" in his cell, B-104, on March 28, 2019. Ferebee alleged that mold was all over his cell walls, window and bunk.

In response to an Informal Complaint complaining of mold, filed on April 25, 2019, Reynolds responded on April 29, 2019, that he had just cleaned the cells in B-1, and Ferebee should let him know if he needed additional cleaning supplies. Ferebee said that he then filed a Regular Grievance concerning the mold in his cell. Warden Manis responded that Ferebee's Grievance was unfounded because the Maintenance Department had inspected Ferebee's cell and found no evidence of mold. This decision was upheld on appeal to the Regional Administrator. Ferebee attached his requests for administrative remedies and the VDOC's responses to his original Complaint. (Docket Item No. 1-1.)

Ferebee said that he spoke to Manis again on June 3, 2019, about "overall" prison conditions. After that, Ferebee alleged he was moved to cell B-101 and, then, to cell B-102, where mold also existed. Ferebee alleged that he spoke to Manis again on July 11, 2019, about the black mold in cell B-101.

Ferebee alleged that the mold destroyed his photos and photo album, letters, cards, books, clothes and blanket. Ferebee seeks compensatory damages of $1 million, punitive damages of $500,000.00, and nominal, special and treble damages and injunctive relief ordering that he and all prisoners be removed from Wallens Ridge.

In his motion for preliminary injunction, ("Preliminary Injunction Motion"), (Docket Item No. 24), which also was sworn to under penalty of perjury, Ferebee alleged that he has been exposed to mold and/or black mold in Wallens Ridge cells B-104, B-101 and B-102 since February 26, 2019. Ferebee, again, alleged that he spoke to Manis regarding prison conditions on March 28 and June 3, 2019. Ferebee also alleged that he spoke to Reynolds on July 11, 2019, and to VDOC Health Services Director McMillian on July 10, 2019, about the "mold and/or black mold" in Wallens Ridge. On July 11, 2019, Ferebee alleged that he showed Reynolds the "prison condition(s) all over the cell." (Preliminary Injunction Motion at 4.)

Ferebee alleged in the Preliminary Injunction Motion that he could "barely breath[e] most of the time in my cell and while in the pod for pod recreation because I feel a shortness of breath and my lung(s) be hurting, and some time(s) I be coughing up blood." (Preliminary Injunction Motion at 4.) Ferebee alleged that there was a crack in the prison's B Building foundation, which ran from cell B-101 to B-108, and through which rain water would travel into cells B-104, B-101 and B-102. Ferebee stated that he "believed" this crack was the source of the mold in the B Building.

In an Affidavit attached to the Preliminary Injunction Motion, (Docket Item No. 24-2) ("Affidavit"), Ferebee again stated that he "can barely breath[e] and have

-3-

a shortness of air and my lung(s) be hurting, some time(s) I cough up blood." (Affidavit at 2.) Ferebee also stated that he spoke with Warden Manis about "Prison Condition(s) of Mold and/or Blackmold" on March 28 and June 3, 2019, and spoke with McMillian, the Health Services Director of VDOC, on July 10, 2019, and "notified" him of the "pre-existing" mold and/or black mold conditions at Wallens Ridge. Ferebee also stated that he spoke with Unit Manager Reynolds on July 11, 2019, about the mold and/or black mold. (Affidavit at 2-3.)

Ferebee further stated that on December 13, 2019, Reynolds came into the B-1 Pod with Correctional Sergeant Roberts and Correctional Officer Polly pushing a cart with buckets of white and blue paint, a pole and paint rollers. Ferebee further stated that a Wallens Ridge maintenance worker came into the B-1 Pod on January 30, 2020, on a "Big Moving Machine" and painted over the mold and/or black mold on the ceiling close to cells 1-8, by the sally port door and the mail and commissary box, beside #6 and 7 pod phones and above the pod television. Days before, he stated, a maintenance worker and supervisor came into the B-1 Pod and sprayed bleach on the mold and/or black mold all over the ceiling and took a towel and wiped it off. (Affidavit at 3-4.)

In his Affidavit Of Truth And Facts, (Docket Item No. 54), ("Second Affidavit"), Ferebee stated that the "fungi" in Building B at Wallens Ridge had to be mold and not mildew because it returned every time it was painted over. He stated that Defendant Reynolds had told him that the fungi was mildew and not mold. Ferebee stated that Reynolds said that, if he reported that there was mold in the building, "B1 Pod will not be suitable for offender(s) to live…." (Docket Item No. 54 at 3.) Ferebee stated that he and several other inmates had complained about the mold, but it had never been properly investigated. (Docket Item No. 54 at 3.)

Ferebee stated that he had been diagnosed with asthma after he had filed an Informal Complaint alleging that the Medical Department was trying to "cover up" his medical concerns over mold exposure. Ferebee stated that Wallens Ridge physician Dr. B. Mullins diagnosed him with asthma due to mold exposure and prescribed an inhaler. Ferebee, again, stated that he suffered from shortness of breath, hurting lungs, dizziness, lightheadedness, wheezing and coughing up blood, and his personal property had been damaged. (Docket Item No. 54 at 4.) While Ferebee stated that this Second Affidavit was sworn to under penalty of perjury, he failed to do so. (Docket Item No. 54 at 1-10.)

Ferebee has provided a written statement from Wallens Ridge inmate Thomas Wade, No. 1055103. (Docket Item No. 54 at 13-14.) In this statement, Wade said he had been housed in cell 103 in the B Building at Wallens Ridge since February 2017. Wade said that there was black mold on his cell walls, windows and metal bunk due to having no ventilation in the building. He said breathing the mold was affecting his lungs. Wade said the problem had grown worse since the building's ventilation system continued to shut down. While Wade stated his affidavit was sworn to under penalty of perjury, he failed to do so. (Docket Item No. 54 at 13-14.)

Ferebee has provided a written statement from Wallens Ridge inmate Kevon Williams, No. 1778880. (Docket Item No. 54 at 11-12.) In this statement, Williams said he had been housed in the B-1 Building at Wallens Ridge since May 12, 2017. Williams said his cell was "infested with mold," and there was no air conditioning. (Docket Item No. 54 at 11-12.) Williams said the mold was affecting his laundry, clothes and bed linens. He said the mold had been a problem since he had been housed in the B-1 Building. He said that the staff "try to paint over it so it would look[] like nothing…. (Docket Item No. 54 at 12.) While Williams stated his

affidavit was sworn to under penalty of perjury, he failed to do so. (Docket Item No. 54 at 11-12.)

Ferebee has provided a written statement from Wallens Ridge inmate Lawrence Roberson, signed under penalty of perjury. (Docket Item No. 54 at 16.) Roberson said that he arrived at Wallens Ridge in January 2020 and, since then, had been exposed to black mold as well as fecal matter in D Building cell 220 and in B Building cell 112. (Docket Item No. 54 at 16.) He said this exposure caused him shortness of breath, chest tightening, daily headaches and eye irritation. (Docket Item No. 54 at 16.) Roberson said that black mold was "highly visible" in numerous places in the pod. (Docket Item No. 54 at 16.) While Roberson stated his affidavit was sworn to under penalty of perjury, he failed to do so. (Docket Item No. 54 at 16.)

Ferebee has provided a written statement from Wallens Ridge inmate Brian Butts, signed under penalty of perjury. (Docket Item No. 54 at 15.) Butts said that he was housed in cell 102 in the B Building at Wallens Ridges, and he previously had been housed in cell 101.  He said that there was so much mold in cell 101 that it spread throughout his personal clothing, letters and legal mail.  He said the mold is the reason he was moved from cell 101 to cell 102, but he said there was black mold in cell 102. Butts stated, "The facility tried to cover it up with white paint. But the black mold is showing itself to be stronger than anything they can attempt to cover it up with." (Docket Item No. 54 at 15.) Butts said the mold was plain to see underneath the beds and on the cell walls. He said that his cell was "uncomfortable, unpleasant and unlivable." (Docket Item No. 54 at 15.)

In support of the Motion, the defendants have filed an Affidavit from Reynolds, (Docket Item No. 43-1) ("Reynolds Affidavit"). In this Affidavit, Reynolds stated that VDOC records showed that Ferebee had been incarcerated at Wallens Ridge since February 27, 2019. He said that Ferebee was housed in cell B-104 until July 3, 2019, when he was moved to cell B-101.  Ferebee was moved from cell B-101 to cell B-102 on August 16, 2019, where he remained.

Reynolds Affidavit states:

> During the summer of 2019, a project to replace the roofing at Wallens Ridge was underway. During the process of roof removal and replacement, increased moisture was introduced into B-1 housing unit which resulted in mildew in multiple cells, including Ferebee's cell, and in the pod office. The cells on the outside wall of the housing unit were primarily affected. The wall and the foundation are not cracked and water was not entering the building through the wall or floor as Ferebee claims. I notified the Institutional Safety Officer and the issue was addressed in August 2019. The mildew was cleaned with mildew resistant cleaners and every cell in B-1 was painted, including Ferebee's cell. The products were ordered by the Safety Officer, and I supervised the cleaning and painting of the cells. The mildew was resolved after the cells were cleaned and painted. To my knowledge, there has been no black mold in the cells or in any area at Wallens Ridge.

(Docket Item No. 43-1 at 2.)

The defendants also provided an Affidavit from C. Collins, a registered nurse at Wallens Ridge. (Docket Item No. 43-2) ("Collins Affidavit"). Collins stated that a review of Ferebee's VDOC medical records indicated that his primary medical concerns since arriving at Wallens Ridge had been facial acne and hypertension. Collins stated that he had not been seen by medical staff for "any complaints

regarding breathing problems, shortness of breath, hurting lungs, coughing up blood or mold/mildew in his housing unit." (Docket Item No. 43-2 at 1.) Collins attached copies of the relevant portion of Ferebee's medical records to her Affidavit. A review of these medicals shows no complaints of exposure to mold or mildew or any breathing problems. (Docket Item No. 43-2 at 3-10.)

The defendants provided an Affidavit from J. Richardson, the Buildings and Grounds Supervisor at Wallens Ridge. (Docket Item No. 43-3) ("Richardson Affidavit"). Richardson stated that he began employment at Wallens Ridge in October 2019. (Docket Item No. 43-3 at 1.) Prior to his arrival at Wallens Ridge, the roof was replaced during a summer-long project, and new HVAC units were installed. During the project, there were some leaks in the buildings which caused humidity levels to increase. Richardson admitted that he was aware that there was some mildew in some of the cells, which is often the result of poor ventilation. (Docket Item No. 43-3 at 1.) Richardson stated that the cells were treated with specialized mildew cleaner, and they were painted. He stated that all of the cells in B-1 were scrubbed and painted beginning in August 2019. (Docket Item No. 43-3 at 1.)

Later, in December 2019, there also was a dirt-type substance high on the wall in B-1 located approximately eight feet down from the ceiling. Richardson stated that this material also was scrubbed and treated, and the walls were painted. (Docket Item No. 43-3 at 2.) Richardson explained that Security staff is responsible for checking the cells and preparing weekly sanitation reports for each housing unit, while Buildings and Grounds staff and the Institutional Safety Officer conduct inspections of the housing units on a monthly basis for fire safety, including the pod areas and showers. (Docket Item No. 43-3 at 2.) Richardson stated that the mildew

in B-1 was reported to Buildings and Grounds by Housing Unit Manager Quinn Reynolds. (Docket Item No. 43-3 at 2.) The necessary cleaning materials were ordered by Building and Grounds in June and October of 2019, and Reynolds coordinated the cleaning and painting of the cells in B-1. Richardson stated that he had no knowledge that black mold was found in any of the housing units, including B-1 Housing Unit. (Docket Item No. 43-3 at 2.) In addition to filing a grievance, offenders may submit complaints to the Buildings and Grounds staff and the Institutional Safety Officer, Mr. Carroll. Records kept by Richardson's department reflect that no written complaints were received from Ferebee or any offender in B-1 Housing Unit about mold or mildew in the cells. (Docket Item No. 43-3 at 2.)

The defendants provided an Affidavit from Carl A. Manis, the Regional Administrator for Institutions in the Western Region of the VDOC. (Docket Item No. 43-4) ("Manis Affidavit"). This Affidavit was not sworn under oath and, therefore, may not be considered as evidence on the Motion. Nonetheless, Manis stated that, in the summer of 2019, a roof replacement project was underway at Wallens Ridge. To Manis's understanding, during the project, the roof membrane was taken up, and moisture entered the building through leaks. Maintenance staff checked the housing units and determined that mildew was present in the corners of some of the cells. The inspections and treatment of the mildew continued during the roofing project. The mildew was treated with chemicals made specifically to combat it, and all of the cells were painted. (Docket Item No. 43-4 at 2.) Manis stated that Wallens Ridge keeps a log of his rounds in the housing units. According to these records, Manis made rounds in B-1 Housing Unit on February 20, 2019; March 6, 14 and 26, 2019; May 16, 2019; June 5 and 11, 2019; July 10 and 31, 2019; and August 15, 2019. (Docket Item No. 43-4 at 2.) Manis did not make rounds in B-1 on March 28, 2019, and June 3, 2019, the dates Ferebee stated that he talked to Manis

and other staff members about prison conditions. Manis stated that during his rounds, he went to every offender's cell, and he did not recall talking with Ferebee about his cell, and he did not tell Ferebee that he "should not have it made." (Docket Item No. 43-4 at 2.) Manis stated that, to the best of his knowledge, the mildew in B-1 was adequately addressed and resolved in a timely manner, and all of the cells were scrubbed and painted. To his knowledge, the material was not tested because there was not enough of an accumulation of the substance for testing. (Docket Item No. 43-4 at 2.) Manis explained that offenders' cell doors are closed much of the day, and they put towels underneath the cell doors and cover the air vents, which reduces the ability for moisture to evaporate and for air to circulate in the cell. This is a daily occurrence in the offender housing units, and staff works diligently against the blocking of the air vents. (Docket Item No. 43-4 at 2.) Manis stated that he had no reason to believe that there was anything other than mildew in limited areas of the housing units during the roofing project at Wallens Ridge. (Docket Item No. 43-4 at 2-3.)

The defendants also have provided an Affidavit from T. Townsend, a registered nurse and the Director of Nursing at Wallens Ridge. (Docket Item No. 59-2) ("Townsend Affidavit"). Townsend stated that she had reviewed Ferebee's VDOC medical progress notes from April 2020 to the date of her Affidavit, August 6, 2020. Townsend said that these notes showed that Ferebee was seen during sick call for a complaint of shortness of breath on May 8, 2020. (Docket Item No. 59-2 at 2.) The nurse noted that, when she arrived at Ferebee's cell door, Ferebee was working out and showed no difficulty breathing. The nurse noted that Ferebee had a steady gait, and he was alert and oriented with no signs of distress. His capillary refill time was less than two seconds. The nurse referred Ferebee to the physician for further assessment. (Docket Item No. 59-2 at 2.)

According to Townsend, Ferebee was seen by a physician on May 18, 2020,[2] for complaints of shortness of breath for one year with cough and blood. The physician noted that Ferebee had no fever and a negative history for lung disease. The physician noted that Ferebee's lungs were clear, and he ordered a chest x-ray. He also prescribed an inhaler. A chest x-ray was conducted on Ferebee on June 4, 2020. On June 8, 2020, Dr. Mullins found that Ferebee's chest x-ray showed that his lungs were clear and within normal limits. Ferebee saw Dr. Mullins for blood work on June 18, 2020, with follow up in one month. (Docket Item No. 59-2 at 2.)

Ferebee saw Dr. Mullins for follow up and hypertension chronic care on July 16, 2020. Ferebee had no complaints. Townsend said that, according to the record, Ferebee continued to use his inhaler as needed due to his complaints of shortness of breath. She said that the medical records showed that Ferebee had voiced no complaints since May 18, 2020. (Docket Item No. 59-2 at 2-3.) The relevant medical records were attached to Townsend's Affidavit. (Docket Item No. 59-2 at 4-8.)

The defendants also have filed a Supplemental Affidavit from Reynolds. (Docket Item No. 59-3) ("Reynolds Supplemental Affidavit"). In this Affidavit, Reynolds stated that, since signing his earlier Affidavit on April 3, 2020, he had not received any new offender complaints regarding mold or mildew in the Wallens Ridge B-1 Housing Unit or in individual cells. (Docket Item No. 59-3 at 1-2.) He also stated that he was not aware of any continuing issues concerning mildew, mold

---

[2] Ferebee alleged in his Second Affidavit, (Docket Item No. 54), that, on May 18, 2020, Dr. B. Mullins diagnosed him with asthma resulting from being exposed to mold or black mold. (Docket Item No. 54 at 4.) Again, while Ferebee states that this Affidavit was sworn under oath, it was not. (Docket Item No. 54.) Regardless, Ferebee's hearsay statement of what a physician had told him would not be admissible at trial, and, therefore, cannot be used to establish a genuine dispute of material fact on summary judgment. *See* FED. R. CIV. P. 56(c)(4).

or black mold. He stated that Ferebee was no longer housed in the B-1 Housing Unit and was moved to the C Building on May 20, 2020, to the C-6 Housing Unit. (Docket Item No. 59-3 at 2.)

In his Cross-Motion, Ferebee admits that, on or about May 20, 2020, he was removed from being housed in the B-Building and placed in the C-Building Housing Unit, specifically cell C1-106. (Docket Item No. 64 at 4.) Ferebee's Cross-Motion is asking the court to rule on whether infractions he has allegedly received constitute retaliation as a result of his pending lawsuits, which is an attempt to assert a new claim into this litigation. (Docket Item No. 64 at 4-5.) In addition, the Cross-Motion seeks a "specific declaration" as to whether mold, black mold or mildew possess the same elements of fungi, (Docket Item No. 64), which was addressed when the court denied Ferebee's Motion For Leave For Scientific Testing. (Docket Item Nos. 53, 57.)

## II. Analysis

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to

be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The defendants argue that there is no genuine dispute of material fact, and they are entitled to the entry of summary judgment in their favor on Ferebee's claims. In particular, they argue that Ferebee cannot recover monetary damages against them in their official capacities. They also argue that the undisputed facts do not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment, in that Ferebee has not presented evidence of an objectively extreme deprivation or of subjective deliberate indifference. The defendants further argue that they are entitled to qualified immunity because Ferebee's allegations do not rise to the level of a constitutional violation, and he has not demonstrated that the defendants' actions violated a clearly established statutory or constitutional right of which a reasonable person would have known.

Ferebee's Amended Complaint claims that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to the dangers posed by his conditions of confinement. In particular, Ferebee claims that the defendants were deliberately indifferent to the danger posed to him by exposure to mold or mildew in the B-1 Housing Unit at Wallens Ridge. The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To amount to deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[D]eliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Ferebee, as the plaintiff, has the burden to prove each element of his deliberate indifference claim, including his assertion that mold or mildew in his housing unit posed a danger to his health. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (plaintiff in § 1983 deliberate indifference claim must show alleged danger poses a risk of danger to the plaintiff); *see also Mabry v. N.Y.C. Dep't of Corrs.*, 2009 WL 2709324, at *5 (S.D. N.Y. Mar. 12, 2009) ("As with any tort, a plaintiff asserting a claim of unconstitutional conditions of confinement must demonstrate a causal relation between the harm … suffered and the defendant's action or inaction.") (citing *Barnes v. Anderson*, 202 F.3d 150, 158 (2nd Cir. 1999) (in § 1983 action the defendant's actions or inactions must proximately cause plaintiff's injury)).

Viewing the evidence before the court in the light most favorable to Ferebee's claim, the defendants, through Reynolds's Affidavits, have admitted that there was a period of time in 2019 when there was a mildew problem in the B-1 Housing Unit at Wallens Ridge. While the defendants, through Reynolds's Affidavits, also have provided evidence that this mildew problem was remedied, Ferebee has presented evidence disputing that the problem was remedied before he was moved from the B-1 Housing Unit on May 20, 2020.  While the court must resolve this dispute in the evidence in Ferebee's favor, Ferebee's claim, nevertheless, must fail because he has failed to present any evidence that this mold or mildew problem created a substantial risk of serious harm to him or that the defendants were aware of any such risk. *See Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 107 (4th Cir. 2017).

In a case involving a prisoner's claim that prison officials were deliberately indifferent to the prisoner's medical needs, this court has held that, to meet the objective component of a deliberate indifference claim, a medical need must be "sufficiently serious." *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001).  The court held that a medical need is sufficiently serious "'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Shelton*, 148 F. Supp. 2d at 678 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Also, expert medical opinion evidence is usually required to show the cause of an injury or disease, or, as is relevant in this case, the propensity to cause a disease or injury, "because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Barnes*, 202 F.3d at 159.

While Ferebee claims that he suffered injury to his health from exposure to mold while housed in the B-1 Housing Unit, Ferebee has produced no medical evidence of any physical injury, or even any risk of injury, caused by exposure to mold or mildew. In fact, the undisputed medical evidence before the court shows that Ferebee complained of breathing problems on only one occasion -- May 18, 2020. The physician noted that Ferebee's lungs were clear, and he ordered a chest x-ray, which subsequently showed that Ferebee's lungs were clear and within normal limits. Although the physician prescribed an inhaler for Ferebee, he did not diagnose any particular medical condition, and he did not provide any expert opinion that Ferebee's condition was caused by exposure to mold or mildew.

While Ferebee has attempted to offer Dr. Mullins's statements to him as evidence to be considered in opposition to the Motion, such hearsay statements would not be admissible at trial, and, therefore, may not be considered by the court on summary judgment. *See* FED. R. CIV. P. 56(c)(4).

Furthermore, the undisputed evidence before the court shows that Ferebee, within two days of seeking medical treatment for breathing problems, was moved from the B-1 Housing Unit.

Based on the above-stated reason, an appropriate order will be entered granting the Motion and denying the Cross Motion, and judgment will be entered in favor of the defendants.

**ENTERED**: February 18, 2021.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE